IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

KENNETH EVANS,

             Plaintiff,                              No. CIV S-10-1969 GEB GGH P

     vs.

CSP SACRAMENTO, et al.,

             Defendants.                      FINDINGS AND RECOMMENDATIONS

_____/

Introduction

             Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983.  Pending before the court is defendant's June 6, 2011, motion to dismiss for failure to exhaust administrative remedies and to dismiss the state law claim for failing to comply with the California Tort Claims Act.

             This case is currently proceeding on the amended complaint filed on December 20, 2010, with allegations that the sole defendant, nurse Bakewell, was deliberately indifferent to plaintiff's serious medical needs in violation of federal and state law, while plaintiff was at California State Prison – Sacramento (CSP-Sac.).

////

////

1

1  Motion to Dismiss

2          Legal Standard

3          The Prison Litigation Reform Act of 1995 (PLRA) amended 42 U.S.C. § 1997e to

4  provide that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. §

5  1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional

6  facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

7  Exhaustion in prisoner cases covered by § 1997e(a) is mandatory.  Porter v. Nussle, 534 U.S.

8  516, 524 (2002).  Exhaustion is a prerequisite for all prisoner suits regarding the conditions of

9  their confinement, whether they involve general circumstances or particular episodes, and

10  whether they allege excessive force or some other wrong.  Porter, 534 U.S. at 532.

11          Exhaustion of all "available" remedies is mandatory; those remedies need not

12  meet federal standards, nor must they be "plain, speedy and effective."  Id. at 524; Booth v.

13  Churner, 532 U.S. 731, 740, n. 5 (2001).  Even when the prisoner seeks relief not available in

14  grievance proceedings, notably money damages, exhaustion is a prerequisite to suit.  Booth, 532

15  U.S. at 741.  A prisoner "seeking only money damages must complete a prison administrative

16  process that could provide some sort of relief on the complaint stated, but no money."  Id. at

17  734.[1]

18          A prisoner need not exhaust further levels of review once he has either received

19  all the remedies that are "available" at an intermediate level of review, or has been reliably

20  informed by an administrator that no more remedies are available.  Brown v. Valoff, 422 F.3d

21  926, 934-35 (9th Cir. 2005).  As there can be no absence of exhaustion unless some relief

22  remains available, a movant claiming lack of exhaustion must demonstrate that pertinent relief

23

24          [1] That the administrative procedure cannot result in the particular form of relief requested
by the prisoner does not excuse exhaustion because some sort of relief or responsive action may
25  result from the grievance.  See Booth, 532 U.S. at 737; see also Porter, 534 U.S. at 525 (purposes
of exhaustion requirement include allowing prison to take responsive action, filtering out
26  frivolous cases, and creating administrative records).

1  remained available, whether at unexhausted levels or through awaiting the results of the relief

2  already granted as a result of that process.  Brown, 422 F.3d at 936-37.

3            The PLRA requires proper exhaustion of administrative remedies.  Woodford v.

4  Ngo, 548 U.S. 81, 83-84 (2006).  "Proper exhaustion demands compliance with an agency's

5  deadlines and other critical procedural rules because no adjudicative system can function

6  effectively without imposing some orderly structure on the course of its proceedings."  Id. at

7  90-91.  Thus, compliance with prison grievance procedures is required by the PLRA to properly

8  exhaust.  Id.  The PLRA's exhaustion requirement cannot be satisfied "by filing an untimely or

9  otherwise procedurally defective administrative grievance or appeal."  Id. at 83-84.

10           At the time relevant to this action, the State of California provided its prisoners

11  the right to appeal administratively "any departmental decision, action, condition or policy which

12  they can demonstrate as having an adverse effect upon their welfare."  Cal. Code Regs. tit. 15, §

13  3084.1(a).  It also provides them the right to file appeals alleging misconduct by correctional

14  officers and officials.  Id. § 3084.1(e).  In order to exhaust available administrative remedies

15  within this system, a prisoner must proceed through several levels of appeal: (1) informal

16  resolution, (2) formal written appeal on a 602 inmate appeal form, (3) second level appeal to the

17  institution head or designee, and (4) third level appeal to the Director of the CDCR.  Barry v.

18  Ratelle, 985 F.Supp. 1235, 1237 (S.D. Cal. 1997) (citing Cal. Code Regs. tit. 15, § 3084.5).  A

19  final decision from the Director's level of review satisfies the exhaustion requirement under §

20  1997e(a).  Id. at 1237-38.

21           Failure to exhaust administrative remedies is an affirmative defense properly

22  raised by a defendant in an unenumerated Fed. R. Civ. P. Rule 12(b) motion.  Jones v. Bock, 549

23  U.S. 199, 216 (2007).  If the court concludes the prisoner has not exhausted non-judicial

24  remedies, the proper remedy is dismissal of the claim without prejudice.  Wyatt v. Terhune, 315

25  F.3d 1108, 1119-1120 (9th Cir. 2003).  Defendants bear the burden of raising and proving

26  non-exhaustion.  Id. at 1119.  The court may resolve any disputed material facts on the

3

1   exhaustion issue by looking beyond the pleadings in deciding a motion to dismiss for failure to

2   exhaust. Id. at 1119-20.  No presumption of truthfulness attaches to a plaintiff's assertions

3   associated with the exhaustion requirement.  See Ritza v. Int'l Longshoremen's and

4   Warehousemen's Union, 837 F.2d 365, 369 (9th Cir. 1988).

5                    Discussion

6                    On January 6, 2009, defendant Bakewell conducted a follow up examination of

7   plaintiff's left knee which had undergone surgical repair on December 2, 2008.  Defendant

8   denied plaintiff's request to continue on morphine and instead prescribed Motrin, noting that the

9   surgery had occurred more than a month prior.  Plaintiff alleges this demonstrates deliberate

10  indifference.

11                   On January 6, 2009, plaintiff filed a grievance regarding Bakewell that was

12  received by prison officials on January 14, 2009, and identified as SAC-10-09-10193.  The

13  grievance alleged that Bakewell was rude and discontinued plaintiff's pain medication, when

14  plaintiff sought to continue with the morphine.  MTD: Exh. A, Attachment 2.  On January 20,

15  2009, the appeal was screened out at the Informal Level and returned to plaintiff as it was

16  deemed not to meet the criteria for a staff complaint.  Plaintiff resubmitted the appeal at the First

17  Level of review on February 5, 2009.  MTD: Exh. A, Attachment 3.  In response to this

18  resubmission an appointment was scheduled for plaintiff to meet with the Chief Medical Officer

19  on March 10, 2009.  However, plaintiff was transferred from CSP-Sac to the Substance Abuse

20  Treatment Facility (SATF) on February 25, 2009.[2]  Nevertheless, a telephone interview was

21  conducted on March 18, 2009, between prison officials from CSP-Sac and plaintiff.  Plaintiff

22  was informed that his grievance did not meet the criteria for a staff complaint, therefore he would

23  not be speaking with the Chief Medical Officer, and as plaintiff had been transferred he should

24

25           [2] Plaintiff has filed additional grievances requesting morphine or methadone, but those
     grievances involve medical staff at SATF who apparently chose not to provide narcotic pain
26   medication to plaintiff.  While these have been included as exhibits, they are irrelevant with
     respect to the defendant in this action and what occurred at CSP-Sac.

                                             4

1  address his medication requests to medical staff at this new facility.[3]  MTD: Exh. A, Attachment

2  5.  The appeal was therefore denied on March 23, 2009.  Id.

3  Seven months later, on October 22, 2009, plaintiff proceeded to the second level

4  of review.  MTD: Exh. A, Attachment 3.  This appeal was screened out and returned to plaintiff

5  on October 28, 2009.  Id.  While the second level appeal screen out was not provided, a summary

6  of the third level appeal history indicates that this second level appeal was screened out due to

7  the time lapse.  MTD: Exh. B, Attachment 1 at 5.

8  Several months later on January 4, 2010, plaintiff appealed the Bakewell

9  grievance to the third level.  This appeal was rejected and returned to plaintiff on January 28,

10  2010, also for time lapse.  MTD: Exh. B, Attachment 1 at 5.  Plaintiff never resubmitted it.

11  Defendant argues that plaintiff failed to pursue the grievance system through to its

12  completion, and notes that the final appeal was rejected as untimely.  Plaintiff filed an opposition

13  to the motion to dismiss and a separate reply, however in both those filings, plaintiff failed to

14  discuss the time lapses that caused his second and third level appeals to be screened out.  Plaintiff

15  simply includes his appeal history that has been recounted above and stated he filed appeals at all

16  levels.  While this is accurate, the vital issue in this motion is that the appeals were not properly

17  and timely filed and plaintiff therefore failed to properly exhaust.

18  In Woodford v. Ngo, 548 U.S. 81, 83-84 (2006), the Supreme Court was clear that

19  procedural rules must be met and appeals must be timely filed.  In the instant case, it is clear that

20  plaintiff has failed to follow the procedural rules.  It does not appear, nor are there any arguments

21  that plaintiff's second and third level appeals were improperly or untimely screened out by prison

22  officials.  The record before the undersigned indicates that plaintiff waited several months to file

23

24

25  [3] It is possible that defendant would argue that as this was not a proper staff complaint it could not be exhausted, yet as set forth below, plaintiff failed to timely appeal the issue, so the

26  undersigned need not address if this was a proper staff complaint.

these appeals.[4]  While defendant has failed to state or provide any exhibits outlining the time limit for appealing these denials, it is sufficient that the appeal records indicate they were untimely.  The undersigned notes that at the time of plaintiff's appeal a prisoner was required to submit the initial appeal within fifteen working days "of the event or decision being appealed" and resubmit the appeal to each level of review within fifteen working days of receiving a denial from the previous level.  Cal. Code Regs. tit. 15 § 3084.6.[5]  The multiple month delays of plaintiff's appeal are well beyond the normal time period.  Thus, defendant's motion to dismiss is granted as plaintiff did not properly exhaust this claim.

<u>State Claim</u>

Defendant also moves to dismiss plaintiff's state law claim, arguing that the claim should be dismissed because plaintiff did not plead compliance with the California Torts Claims Act ("GCA").[6]  The GCA requires that a party seeking to recover money damages from a public entity or its employees must submit a claim to the entity before filing suit in court, generally no later than six months after the cause of action accrues.  Cal. Gov't Code §§ 905, 911.2, 945, 950.2; <u>see also</u> <u>Shirk v. Vista Unified Sch. Dist.</u>, 42 Cal. 4th 201, 208 (2007) ("Before suing a public entity, the plaintiff must present a timely written claim. . .").  "The legislature's intent to require the presentation of claims before suit is filed could not be clearer."  <u>City of Stockton v. Super. Ct,</u>, 42 Cal. 4th 730, 746 (2007) ("The purpose of providing public entities with sufficient information to investigate claims without the expense of litigation is not served if the entity must file a responsive pleading alerting its opponent to the claim requirements.").  Timely claim

---

[4] Part of the appeal records indicate that plaintiff attempted to explain why the second level appeal was late, but the description in the records is brief and unclear and ultimately plaintiff has failed to provide a reason.  MTD: Exh. B, Attachment 1 at 5.

[5] It is now 30 days.

[6] In 2007, the California Supreme Court adopted the practice of using the title "Government Claims Act" instead of "California Tort Claims Act."  <u>See</u> <u>City of Stockton v. Superior Court</u>, 42 Cal. 4th 730, 741-42 (2007).

1   presentation is not merely a procedural requirement of the GCA but is an element of a plaintiff's

2   cause of action.  Shirk, 42 Cal. 4th at 209.  Thus, when a plaintiff asserts a claim subject to the

3   GCA, he must affirmatively allege compliance with the claim presentation procedure, or

4   circumstances excusing such compliance, in his complaint.  Id.  The requirement that a plaintiff

5   asserting claims subject to the GCA must affirmatively allege compliance with the claims filing

6   requirement applies in federal court as well.  Karim-Panahi v. Los Angeles Police Dep't, 839

7   F.2d 621, 627 (9th Cir. 1988).

8          Plaintiff has failed to provide any information that he complied with the GCA.

9   Defendant also requests that the undersigned take judicial notice of a declaration from the

10  custodian of records for the California Victim Compensation and Government Claims Board that

11  plaintiff has not filed a claim.  This record is susceptible of judicial notice and the undersigned

12  grants defendant's request in this regard.  See Smith v. Duncan, 297 F.3d 809, 815 (9th Cir.

13  2002) *abrogated on other grounds*, see Moreno v. Harris, 245 Fed. Appx. 606 (9th Cir. 2007).

14  Therefore, to the extent this action contains a state law claim, any such claim is dismissed.

15         Accordingly, IT IS HEREBY RECOMMENDED that defendant's motion to

16  dismiss, filed on June 6, 2011, (Doc. 31), be granted and this case be dismissed.

17         These findings and recommendations are submitted to the United States District

18  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen

19  days after being served with these findings and recommendations, any party may file written

20  objections with the court and serve a copy on all parties.  Such a document should be captioned

21  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

22  shall be served and filed within seven days after service of the objections.  The parties are

23  ////

24  ////

25  ////

26  ////

1  advised that failure to file objections within the specified time may waive the right to appeal the

2  District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

3  DATED: October 4, 2011

4                                             /s/ Gregory G. Hollows
                                     UNITED STATES MAGISTRATE JUDGE

5

6  GGH: AB
   evan1969.mtd

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26